**UNITED STATES of America**

v.

**Lee LEICHTER, John Cvinar, and David Prigmore, Defendants.**

United States District Court,
D. Massachusetts.

Jan. 12, 2000.

Michael K. Loucks, United States Attorney's Office, Boston, MA, for U.S.

Andrew Good, Silverglate & Good, Boston, MA, for Lee H. Leichter, Defendant.

William H. Kettlewell, Dwyer & Collora, Boston, MA, for John F. Cvinar, Defendant.

Robert D. Keefe, Hale & Dorr, Boston, MA, for David W. Prigmore, Defendant.

*MEMORANDUM*

TAURO, District Judge.

This case comes before the court on Defendants' Motion to Dismiss Untried Counts on Speedy Trial Grounds. For the reasons discussed below, this court finds that the statutory period for exclusion was exceeded and Defendants' motion, therefore, is ALLOWED.

## I. BACKGROUND

On October 14, 1993, a federal grand jury, sitting in Boston, Massachusetts, returned a 393 count sealed indictment against George T. Maloney, David M. Prigmore, John F. Cvinar. Lee H. Leichter, Kenneth G. Thurston, and Janice T. Piasecki. Count I of that indictment charged that Defendants had conspired to defraud the Food and Drug Administration ("FDA"), hospitals, patients, and doctors through an allegedly fraudulent scheme involving the sale of adulterated heart catheters and concealment of information from the FDA.[1]

On January 18, 1995, the grand jury returned a 391 count superseding indictment. Count I of the superseding indictment narrowed the scope of the alleged conspiracy by charging that Defendants had conspired to defraud only the FDA by impairing its lawful government functions. It charged that, from 1987 through in or about 1990, Defendants knowingly and willfully conspired to defraud the United States, and its agency the FDA, by making false and fraudulent statements and by concealing material facts from the FDA in connection with the manufacturing, packaging, marketing, and distribution of various types of heart catheters.[2]

For purposes of effective case management, this court severed the conspiracy count and instructed the parties to proceeded to trial only as to Count I of the superseding indictment, the conspiracy charge. The other counts of the superseding indictment remained pending.

At the close of the government's case, the court allowed a motion for a judgment of acquittal as to Defendant Piasecki, finding that there was insufficient evidence upon which a jury could conclude that she was part of the conspiracy to defraud the FDA.

On August 24, 1995, Defendants Prigmore, Leichter, and Cvinar were found guilty as to Count I. Defendants Maloney and Thurston were acquitted. Following the convictions, the Government dismissed all but 38 remaining counts. These are the subject of the pending motion.

This court sentenced Defendants to 18 months imprisonment and two years supervised release in August 1996, and entered judgment on March 13, 1997. In March 1997, Defendants filed Notices of Appeal.

In a November 3, 1998 opinion, the First Circuit held that it lacked jurisdiction to hear the appeal because this court had not rendered a "final decision," as to the 38 counts in the indictment that remained untried. After the denial of the Government's petition for rehearing en banc, the Court of Appeals stayed the issuance of Mandate pending the Government's determination whether to appeal to the Supreme Court. On May 20, 1999, the Court of Appeals issued its Mandate, following a decision by the Government not to seek certiorari, dismissing the case without prejudice upon a finding that it lacked jurisdiction to hear the appeal. Defendants now seek the dismissal of the 38 remaining counts for violations of their Speedy Trial rights.

## II. ANALYSIS:

Defendants' Motion asserts that the 38 untried counts of the superceding indictment should be dismissed for two reasons. First, they assert that Defendants' rights under the Speedy Trial Act (the "Act"), 18 U.S.C. § 3161, et seq., have been violated because Defendants were not tried within the seventy day statutory period. *See id.*

---

1. A heart catheter is a fixed shape balloon on a wire which is used as a device to remove blockages in coronary arteries.

2. Approximately two years before, C.R. Bard, Inc., the company for which Defendants worked, pleaded guilty to a multi-count indictment that mirrored the original indictment here. On April 4, 1994, United States District Judge Mark Wolf sentenced Bard to a criminal fine of $30,500,000 and a special assessment of $78,200.

at § 3161(c)(1). Defendants contend that, instead, a total of at least 830 non-excludable days have elapsed on the speedy trial clock. Second, Defendants assert that their constitutional right to a speedy trial has been violated under the standards established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The court need not consider this latter constitutional issue because Defendants have adequately established delay sufficient to find a violation of the Speedy Trial Act.

Defendants argue that the following periods of time are non-excludable for speedy trial purposes:

1. Four Days—October 17 to 22, 1993. This is the period of time from the last Defendant's initial appearance to the filing of the first pretrial motions. The Government concedes that these days are not excludable.

2. Twenty-eight Days—August 8, 1996 to September 20, 1996. This period represents the elapsed time between the sentencing of Defendants and the Government's first motion for a continuance or excludable delay ("first disputed period").

3. Six hundred and seventy-six days—July 13, 1997 to May 20, 1999. This period begins with the expiration of the "advisement time"[3] for the Government's motions for a continuance or for excludable delay, and ends with the issuance of Mandate by the Court of Appeals ("second disputed period").

4. One hundred twenty-two days—May 21, 1999 to September 23, 1999. This period begins with the issuance of Mandate by the Court of Appeals and ends with the Government's filing of a Motion to Enlarge Time ("third disputed period").

These time periods total 830 days.

In deciding whether a Speedy Trial Act violation occurred in this case, the determinative issue is whether there were motions pending before this court that required the exclusion of some or all of the above periods of delay. Under the Supreme Court's reading of Sections 3161(h)(1)(J) and (F) of the Act, time is excluded during the pendency of motions in two distinct circumstances. *See Henderson v. United States*, 476 U.S. 321, 329–31, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). First, where no hearing is required to decide a pending motion, time will cease to be excluded 30 days after the "motion is actually 'under advisement' by the court." *Id.* at 329, 106 S.Ct. 1871. A motion is considered under advisement once the court has received all of the papers necessary to decide the motion. *See id.* at 331, 106 S.Ct. 1871. Second, where a hearing is required to decide a motion, the court may exclude all of the time between the filing of the motion and the date of the hearing, regardless of whether that delay was reasonable. *See id.* at 326–27, 106 S.Ct. 1871 (citing 18 U.S.C. § 3161(h)(1)(F)). In addition, once the hearing has been held, the court may also exclude the time between the hearing and its receipt of any papers necessary to decide the motion, plus the thirty day period during which the motion is "under advisement." *See id.* at 329–30, 106 S.Ct. 1871.

Defendants contend that, under the standards established in *Henderson*, there was no basis for excludable delay during any of the three disputed periods, and thus a total of 830 days have impermissibly elapsed.

The Government responds that all but four of the 830 days are excludable be-

---

**3.** As is discussed below, once a motion has been fully briefed and a hearing has been held (if required), then the court may only exclude for speedy trial purposes a thirty day period during which the motion is "under advise-ment." *See Henderson v. United States*, 476 U.S. 321, 329–31, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) (citing 18 U.S.C. § 3161(h)(1)). That period begins with the filing of the last paper following the motion. *See id.*

cause there were, in fact, motions pending before the court during all three disputed periods. The motions in question fall into two categories. First, the Government contends that there were eleven motions relating to the untried counts. These motions were all filed prior to the superceding indictment filed on January 18, 1995. The second set of motions include three filed by the Government seeking a continuance or an exclusion of time. These were filed on September 18, 1996, October 17, 1996, and April 2, 1997.

The Government argues that under the Supreme Court's interpretation of 18 U.S.C. § 3161(h)(1)(F), the pendency of both categories of motions require this court to exclude the time periods cited by Defendants. This court disagrees.

### A. Defendants' Motions Filed Prior to the Superceding Indictment Are Not Pending.

■ The Government first argues that all of the disputed time periods are excludable, because eleven motions filed by Defendants prior to the Superceding Indictment ("SI") (filed January 18, 1995) are still pending. Citing *Henderson*, the Government argues that the entire delay between the filing of the motions and the holding of a hearing is excludable, no matter how long or unreasonable.[4] *See id.* at 326–27, 106 S.Ct. 1871. This argument is entirely without merit here, where there is absolutely nothing on the record to suggest that the motions in question remained before the court following the filing of the Superceding Indictment. At that stage in the litigation, this court was focused entirely on trying Count I, the conspiracy count, of the SI. At the hearing of January

19, 1995, the court discussed the status of already filed motions:

> MR. GOOD: ... we'd like a chance to study [the SI] and give the Court notice ... as to what motions we think are unaffected ... by this indictment....
>
> THE COURT: I want to deal with Count I, because that's the one we're going to deal with.

Tr. of January 19, 1995 Hearing at 6. At a subsequent hearing on April 5, 1995, the court explicitly stated that at the January 19th hearing it had been prepared to deny all the pending motions to dismiss. The court instructed the Defendants to specify how those motions were affected by the SI, but only with respect to Count I. *See* Tr. of April 5, 1995 Hearing at 2. Again the court specified that it only wanted to hear motions as to Count I, stating "You can reserve. In other words, you are protected with respect to all other Motions to Dismiss." *Id.* at 14.

The Government attempts to read the discussions during the January 19, 1995 and April 5, 1995 hearings to suggest that the court was reserving judgment on the other motions to dismiss (those not related to Count I) until some later date. The reality is that the court treated all the motions to dismiss as moot following the SI, instructing the Defendants to identify those motions that were still relevant and limiting the discussion to the conspiracy count that was going to be tried. The court's comments that Defendants were "protected" with regard to other motions simply indicated that those motions could be re-filed or renewed at a later date. Because the eleven motions filed prior to the SI were no longer pending following

---

4. A necessary corollary to this argument is that this category of motions required a hearing for resolution. Under the *Henderson* interpretation, the speedy trial clock is only tolled for thirty days once a pretrial motion is "under advisement." If no hearing is required, this period begins once all the papers are filed. If a hearing is required, this period does not begin until after the hearing is held and all the papers are filed, no matter how

long or unreasonable that delay is. To get the whole filing period excluded, the Government must thus assert that at least some of these motions required a hearing. Otherwise, only the thirty day period while the motions were "under advisement" gets excluded. Because the motions were not, in fact, pending, there is no need to resolve the issue of whether a hearing was required. *See e.g., United States v. Salimonu,* 182 F.3d 63 (1st Cir.1999).

the filing of the SI and the two hearings in early 1995, those motions could not provide a basis for finding that the speedy trial clock stopped running.

**B. The Government's Three Motions for Continuance or Exclusion of Time Do Not Stop the Speedy Trial Clock Because the Motions Were "Under Advisement."**

The Government next argues that their three motions, seeking a continuance or the exclusion of time, also toll the speedy trial clock during the second and third disputed periods. Under this theory, the court would then exclude 798 days, leaving the Government well within the 70 day statutory period. This argument fails, however, because the three motions were under advisement, and thus not subject to exclusion. Under *Henderson*, once a hearing has been held and all the parties have filed their related papers, the court can only exclude a period of thirty days, during with the motion is considered "under advisement." *Id.*, 476 U.S. at 329, 106 S.Ct. 1871. The Government's motion was first filed on September 18, 1996, and renewed on October 17, 1996 and April 2, 1997. The Defendants filed Opposition each time the motion was raised (September 23, 1996, October 23, 1996 and April 11, 1997, respectively) and the motion was the focal point of two separate hearings on September 25, 1996 and March 13, 1997. The final paper relating to the motions was filed on June 12, 1997. Once a hearing was held and the motions were fully briefed, the speedy trial clock could only run for thirty days. As such, Defendants are quite correct that the clock began running on or about July 13, 1997 and continued with only brief pauses [5] through September 23, 1999. This exceeded the seventy day limit many times over.

What is unclear from the record is why this court did not rule on the Government's motions for a continuance or the exclusion of time following the numerous pleadings and hearings. This case presented exceptional circumstances, because the Government was willing to dismiss the untried counts, if Defendants lost their appeal of the convictions on Count I. In other words, no one wanted to proceed to trial on the untried counts. But the Government didn't want to give them up until Defendants' appeal was resolved. During proceedings discussing the jurisdictional aspects of the appeal,[6] the court acknowledged the importance of protecting Defendants' Speedy Trial rights and expressed its intention, on multiple occasions, to decide the Government's exclusion or continuance motions.

While awaiting resolution of the jurisdictional question this court permitted the exclusion or continuance issue to remain pending without resolution. The ambivalence of the parties with respect to trying the remaining counts undoubtedly made them a back burner problem in the eyes of all concerned. This does not excuse the court for its failure to set a firm trial date in a timely fashion. And so, this court accepts responsibility for the resulting violation of Defendants' Speedy Trial rights and the necessity to dismiss the 38 untried counts.

**III. CONCLUSION:**

As no grounds exist under the Speedy Trial Act for exclusion of the time specified by Defendants, their Motion to Dismiss is ALLOWED.

---

5. The clock paused for two days: once when the Government filed a motion to schedule a conference (which was allowed on the same day) and again on the day the conference was held. *See United States v. Barnes*, 159 F.3d 4, 11–12 (1st Cir.1998) (motion for scheduling conference pauses clock until conference is scheduled, but time between setting date for and holding of conference is not excludable).

6. Neither the parties, nor the court, were aware of whether the Court of Appeals could even hear the appeal given the pendency of the remaining counts.