### UNITED STATES
### v.
### Frederick MEDUGNO Defendant.
### No. CRIM.A.02–10128–WGY.

United States District Court,
D. Massachusetts.

Nov. 26, 2002.

Christopher F. Bator, United States Attorney's Office, Boston, MA, for Plaintiff.

Bernard Grossberg, Boston, MA, for Defendant.

### *MEMORANDUM*

YOUNG, Chief Judge.

## I. INTRODUCTION

### A. Procedural Posture

Frederick Medugno ("Medugno") is charged with three counts of witness tampering, pursuant to 18 U.S.C. § 1512(b)(3). Medugno made his first appearance on April 17, 2002. The government subsequently moved to dismiss the case against Medugno without prejudice, conceding that a violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et. seq.*, had occurred. Medugno, however, moved to dismiss the case *with* prejudice. On November 21, 2002, the Court dismissed the case without prejudice. The following opinion sets forth the reasons for that decision.

### A. Facts

The indictment against Medugno was returned and sealed on April 10, 2002, and he made his first appearance on April 17, 2002. Between that date and the date of the motion to dismiss, 177 days have passed, of which at least ninety-eight days constitute non-excludable time. The Speedy Trial Act requires that a defendant be brought to trial within seventy days; thus, the instant case presents a twenty-eight day violation of the Act. Gov. Mot. to Dismiss, at 1–2. Medugno does not contest this computation. Def. Mot. to Dismiss, at 1.

Counts 1 and 2 of the indictment charge Medugno with "corruptly" tampering with witnesses with the intent "to hinder and prevent communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense." Count 3 charges Medugno with intimidating and corruptly per-

suading another person, with the goal of influencing and preventing the person from testifying before a grand jury.

## II. DISCUSSION

In determining whether a case should be dismissed with or without prejudice pursuant to a Speedy Trial Act violation, the Court looks to: (1) the seriousness of the offense; (2) the circumstances leading to the delay; (3) the effect of re-prosecution on the administration of justice and the enforcement of the Speedy Trial Act; and (4) any related miscellaneous factors, including the length of the delay and any actual prejudice to the defendant. *United States v. Barnes,* 159 F.3d 4, 16 (1st Cir. 1998); *United States v. Hastings,* 847 F.2d 920, 924 (1st Cir.1988). Contrary to Medugno's contention, there is no presumption in favor of dismissal with prejudice for Speedy Trial Act violations. *United States v. Brown,* 770 F.2d 241, 243 (1st Cir.1985).

### A. Seriousness of the Offense

The crimes with which Medugno is charged are "serious" crimes, weighing in favor of dismissal without prejudice. The First Circuit has said that "the graver the crimes the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." *Hastings,* 847 F.2d at 925. Not surprisingly, courts throughout this country are loathe to deem any crime as non-serious. *See, e.g., Barnes,* 159 F.3d at 16 (conspiracy to import 110 kilograms of cocaine is serious crime); *United States v. Pierce,* 17 F.3d 146, 148–49 (6th Cir.1994) (tax evasion is serious crime); *United States v. Ramirez,* 973 F.2d 36, 38 (1st Cir.1992) (possession of cocaine with intent to distribute is serious crime); *United States v. Kiszewski,* 877 F.2d 210, 214–15 (2d Cir.1989) (perjury is serious crime); *Hastings,* 847 F.2d at 925 (combination of possession of narcotics with possession of firearm constituted seri-

ous crimes); *United States v. Kramer,* 827 F.2d 1174, 1176 (8th Cir.1987) (misapplication of bank funds and falsifying bank records are serious crimes); *United States v. Simmons,* 786 F.2d 479, 485 (2d Cir. 1986) (conspiracy to distribute heroin is serious crime); *United States v. Salgado–Hernandez,* 790 F.2d 1265, 1268 (5th Cir. 1986) (illegal transportation of aliens is serious crime); *United States v. Hawthorne,* 705 F.2d 258 (7th Cir.1983) (unlawful possession of a stolen check is serious crime).

While the standards for judging "seriousness" are vague, the Fifth and District of Columbia Circuits have ruled that using the punishment prescribed by statute as a measure of the severity of the crime is an appropriate method of analysis under the Speedy Trial Act. *United States v. Melguizo,* 824 F.2d 370, 371 (5th Cir.1987); *United States v. Bittle,* 699 F.2d 1201, 1208 (D.C.Cir.1983). In *Melguizo,* the Fifth Circuit held that the fact that a crime was punishable by a possible sentence of ten years qualified it as a serious crime. *Melguizo,* 824 F.2d at 371. In the instant case, a witness tampering charge carries a base offense level of 12, which can mean a sentence upon conviction as low as ten months for an individual with few criminal history points, or as high as thirty-seven months for an individual with many criminal history points. U.S. Sentencing Guidelines Manual § 2J1.2 (2002). The potential sentence here is thus significantly less than that in *Melguizo.* This does not mean, however, that this crime does not qualify as a serious crime. First, the sentence in the instant case could be increased significantly through enhancements. Moreover, as the Sixth Circuit has held, courts should not apply a "mechanical test based upon the [Sentencing Guidelines]" to determine a crime's seriousness. *Pierce,* 17 F.3d at 149. Rather, the gravity of the crime need simply be "carefully

considered as a factor" in the analysis. *Id.* Indeed, while many crimes may be more serious than witness tampering, many crimes are less serious.

Courts have designated very few crimes as non-serious. The Second Circuit held in *United States v. Caparella,* 716 F.2d 976, 980 (2d Cir.1983) that mail theft is not a serious crime under the analysis. A Utah court similarly held recently that a theft of property valued at $2,000 is not a serious crime. *United States v. Smith,* 225 F.Supp.2d 1305, 1310 (D.Utah 2002). Unlike the defendants in *Caparella* and *Smith,* however, Medugno is not charged with a crime against property. He is charged with obstructing justice, a crime that strikes at the very heart of our justice system. Justice cannot be replaced or repaid like a piece of stolen property. For these reasons, therefore, the first factor weighs in favor of dismissal without prejudice.

### B. Circumstances Leading to the Delay

The circumstances leading to the delay in the instant case are likely the result of unintentional neglect, which weighs in favor of dismissal without prejudice. Where the Speedy Trial Act violation "resulted solely from neglect rather than intentional misconduct, that circumstance tips ever so slightly in favor of dismissal without prejudice." *Barnes,* 159 F.3d at 17. *See also Hastings,* 847 F.2d at 925–26. In *Barnes,*

the court concluded that the Speedy Trial Act violation occurred in large part because of simple neglect on the part of the government and district court and was not a product of any bad faith or intentional conduct on the part of the prosecutor, and thus that a dismissal without prejudice was warranted. *Id.* at 16–17. Similarly, although Medugno makes conclusory statements that the delay was intentional on the part of the government,[1] there is no actual evidence to substantiate such a claim. Rather, the facts show that the government and the Court improperly, but not intentionally, allowed the Speedy Trial Act deadline to pass. Medugno cites to the First Circuit's strong disapproval of simple administrative negligence, as expressed in its 1992 *Ramirez* decision, to argue that the conduct here weighs in favor of dismissal with prejudice. *Ramirez,* 973 F.2d at 39 ("When a [Speedy Trial Act] violation is caused by the court or prosecutor, it weighs in favor of granting a dismissal with prejudice").[2] The First Circuit's more recent decision in *Barnes,* however, holds that such conduct does not weigh in favor of dismissal with prejudice, unless some evidence of intent exists. *Barnes,* 159 F.3d at 17. No such intent exists here, as discussed above. Moreover, like the defendant in *Barnes,* Medugno has done little to advance his case, and has not "behave[d] like a defendant who wanted [his] day in court *posthaste.*" *Id.* (emphasis in original). This

1. In the first ten pages of his brief, Medugno seems to suggest that the government's only intent in initiating the prosecution against him was to coerce him into cooperating in the prosecution of Brian DeIorio. Much of this section of the brief is a transcript of Medugno's detention hearing, but there is no substantive corroborating evidence of government misconduct.

2. Administrative negligence is more serious, of course, as it becomes more pervasive. This is the first time in seventeen years that a

criminal case has been dismissed in this session simply because it fell through the cracks. *United States v. Scott,* 270 F.3d 30 (1st Cir. 2001) (dismissal *without* prejudice), is not to the contrary. There, I recognized, but misinterpreted, the strictures of the Speedy Trial Act. The record in this session, therefore, while not unblemished, is devoid of any indication of systemic flaw or unprofessional carelessness, such that a "with prejudice" order might be thought to be a necessary corrective.

circumstance mitigates, however slightly, the government's responsibility. For these reasons, therefore, the second factor also weighs in favor of dismissal without prejudice.

### C. Effect of Re-prosecution on Administration of Justice and Enforcement of the Act

The effect of re-prosecution on the administration of justice and enforcement of the Speedy Trial Act in the instant case is likely minimal, which weighs in favor of dismissal without prejudice. The case law does not indicate precisely how to gauge the impact of a re-prosecution on the administration of justice and the enforcement of the Speedy Trial Act. *See, e.g., Barnes,* 159 F.3d at 17 (focusing on how long a retrial would take); *Hastings,* 847 F.2d at 927 (focusing on whether alleged government misconduct caused the delay and the resultant Speedy Trial Act violation). Courts appear to analyze the issue on a case-by-case basis.

Of course, any violation of the Speedy Trial Act has a deleterious effect on the administration of justice, but little in the instant case suggests that a retrial would seriously impair the fair administration of justice. A retrial in this case would likely demand only four to five days, according to the government. Furthermore, while sanctions for Speedy Trial Act violations are appropriate for deterrence purposes, requiring a re-indictment is in itself a significant sanction for the government. As the Supreme Court has observed:

> Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to re-prosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely.

*United States v. Taylor,* 487 U.S. 326, 342, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). For these reasons, therefore, the third factor weighs in favor of dismissal without prejudice.

### D. Miscellaneous Factors: Length of Delay and Actual Prejudice

The length of delay in this case was not significant. In *Barnes,* the court ruled that, absent any evidence that delay adversely affected the defendant's ability to prepare for trial, a Speedy Trial Act violation of 121 days did not weigh in favor of dismissal with prejudice. *Barnes,* 159 F.3d at 18; *see also Brown,* 770 F.2d at 245 (thirty-five day delay does not warrant "with prejudice" dismissal where crime is serious); *but see United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984) (several months of delay sufficient to bar reprosecution). In this case, the violation totaled a mere twenty-eight days, far fewer than in *Barnes.*

Furthermore, there is no evidence of any actual prejudice in this case. Medugno misunderstands the term "prejudice" here, in that he suggests that the adverse effects on his state of mind and his reputation constitute prejudice. Def. Mot. to Dismiss at 17–18. Medugno, however, was released from pretrial detention on May 29, 2002, such that the twenty-eight day period in excess of the Speedy Trial Act's 70–day deadline was not time during which he was incarcerated. Accordingly, the Defendant's supervised release did not impede his trial preparation. Indeed, Medugno makes no claim whatsoever that the delay impaired his ability to prepare for trial. For these reasons, therefore, the miscellaneous factors weigh in favor of dismissal without prejudice.

## III. CONCLUSION

For the foregoing reasons, the Court granted the government's Motion to Dismiss Without Prejudice and, accordingly, denied Medugno's Motion to Dismiss With Prejudice.